JUDE G. GRAVOIS, Judge.
 

 12This appeal is taken from judgments of the trial court awarding penalties and attorneys’ fees pursuant to LSA-R.S. 22:658,
 
 [1]
 
 and damages for delay in performance in the form of legal interest pursuant to La. C.C. art. 2000, to an insured against one of its excess insurance carriers. For the reasons that follow, we affirm in part, vacate in part, and remand.
 

 FACTS AND PROCEDURAL HISTORY
 

 Numerous properties owned by the plaintiff, Willwoods Community (“Will-woods”), were damaged by Hurricane Katrina on August 29, 2005. After receiving the policy limits from its primary .insurer, Landmark American Insurance Company (“Landmark”), and several payments from its first excess insurer, Essex Insurance Company (“Essex”), Willwoods sought to recover the balance of its damages from its second excess insurer, R.S.U.I. Indemnity Company (“RSUI”). |sOn August 28, 2006, Willwoods filed suit against Essex and RSUI, alleging in its petition for damages that the defendants “have failed to pay amount [sic] due under their policies issued to petitioner and are liable unto petitioner for all such damages as are reasonable and equitable, together with legal interest thereon from the date of judicial demand until paid and for all cost, penalties, attorney fee [sic] and all other relief provided by R.S. 22:658, R.S. 22:1220 and all other relevant statutes.” Willwoods’ petition further alleged that the defendants “have been provided with adequate proof of loss for damages caused by Hurricane Katrina, indicating damage to these eleven properties [owned by Willwoods] totaling over twenty five million dollars ($25,000,000.00).”
 

 On November 30, 2006, Essex tendered the remainder of its policy limits to Will-woods and was subsequently dismissed from this suit.
 
 [2]
 
 This matter then proceeded solely against RSUI.
 

 Because Willwoods and RSUI could not agree as to the value of Willwoods’ property and the amount of Willwoods’ remaining losses, they proceeded to follow the following appraisal process provided for in the RSUI policy, to-wit;
 

 If we and you disagree on the value of the property or the amount of loss, either may make'written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree,
 
 *1106
 
 either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
 

 Willwoods selected James A. Conn as its appraiser, while RSUI selected Edward R. Reilly, Jr. as its appraiser. Since Mr. Conn and Mr. Reilly could not agree on the remaining losses due Willwoods and on the selection of an umpire to settle |,,their differences, on January 18, 2007 the trial court appointed David J. Halpern to act as the umpire in this matter.
 

 On July 2, 2007, RSUI tendered payments to Willwoods totaling $602,574.94. In accordance with the appraisal process, Mr. Conn and Mr. Reilly then proceeded to each submit separate documentation to Mr. Halpern as to the nature and extent of Willwoods’ losses. Mr. Conn’s damage appraisal report was submitted to Mr. Hal-pern on November 6, 2007. Mr. Reilly’s damage appraisal report was submitted to Mr. Halpern on November 26, 2007, with a supplemental letter thereto dated November 29, 2007. In his detailed appraisal report, as supplemented, Mr. Reilly appraised Willwoods’ remaining damages at $11,256,059.00. Based on Mr. Reilly’s appraisal report, after subtracting the prior payments and applicable deductibles, the amount owed at that point by RSUI to Willwoods was $4,735,183.00. On January 29, 2008, RSUI made an additional “unconditional tender” of $4,708,865.00 to Will-woods, which is $26,318.00 less than the appraised value of Willwoods’ remaining damages as found in Mr. Reilly’s report, as adjusted for prior payments and applicable deductibles. On June 19, 2008, Mr. Hal-pern rendered a decision that additional sums were due Willwoods. On July 18, 2008, RSUI acknowledged that it would not appeal Mr. Halpern’s award. On July 21, 2008, in accordance with Mr. Halpern’s award, RSUI tendered a final additional payment of $4,552,076.74 to Willwoods.
 

 On July 23, 2008, Willwoods filed a Motion for Partial Summary Judgment seeking penalties and attorneys’ fees under LSA-R.S. 22:658 and 22:1220.
 
 [3]
 
 On August 6, 2008, Willwoods filed a second Motion for Partial Summary Judgment seeking damages for RSUI’s delay in performance in the form of judicial interest 15under La. C.C. art. 2000. On August 20, 2008, RSUI filed a Cross-Motion for Summary Judgment regarding Willwoods’ claim for penalties and attorneys’ fees, and a second Cross-Motion for Summary Judgment regarding Willwoods’ claim for damages for delay in performance in the form of judicial interest under La. C.C. art. 2000. The motions for summary judgment were heard by the trial court on September 26, 2008.
 

 On March 27, 2009, the trial court rendered judgment granting Willwoods’ Motion for Partial Summary Judgment against RSUI and awarded Willwoods $2,354,432.50 in penalties and $1,177,216.20 in attorneys’ fees pursuant to LSA-R.S. 22:658. This judgment also found Will-woods’ claim for damages for delay in performance in the form of judicial interest to be premature. This judgment correspondingly denied RSUI’s Cross-Motions regarding Willwoods’ claims for penalties, attorneys’ fees and judicial interest.
 

 
 *1107
 
 Pursuant to a timely request made by RSUI, on April 20, 2009, the trial court issued written reasons for its March 27, 2009 judgment. The trial court found that RSUI was in receipt of sufficient proof of Willwoods’ damages claim as of November 29, 2007, the date of Mr. Reilly’s supplemental report. The trial court noted that Mr. Reilly’s report was based on his research and analysis of volumes of documents. The trial court also found that RSUI’s failure to pay to Willwoods the amount set forth in Mr. Reilly’s report within the thirty-day payment period mandated by LSA-R.S. 22:658 was without any justification or reasonable cause and in violation of LSA-R.S. 22:658, thereby necessitating the imposition of penalties and attorneys’ fees against RSUI in favor of Willwoods. The trial court questioned RSUI’s payment prior to Mr. Halpern’s award if RSUI truly felt that such payment was not due until Mr. Halpern’s report was prepared. The trial court further found that RSUI failed to provide a good faith defense or ^reason why it failed to follow the report of Mr. Reilly, the appraiser that it had appointed as part of the appraisal process.
 

 In its reasons for judgment, the trial court further found that, on the issue of judicial interest, La. C.C. art. 2000 does not require that a judgment be taken before imposition of judicial interest, noting that the payments made by RSUI to Will-woods were unconditional tenders, rather than payments made pursuant to a settlement or compromise agreement between the parties. The trial court further found that La. C.C. art. 2000 provides that interest be paid when an insurer delays payment owed pursuant to the insurance contract between the parties.
 

 Also on April 20, 2009, the trial court rendered an additional judgment reaffirming its March 27, 2009 judgment, except with respect to the imposition of “damages” pursuant to La. C.C. art. 2000. The trial court found that RSUI was placed in default by the filing of the lawsuit against it by Willwoods, and that damages for delay in performance in the form of legal interest under La. C.C. art. 2000 in the amount of $1,430,377.70 was owed by RSUI to Willwoods, calculated from the date of filing by Willwoods of its petition for damages against RSUI until the dates the three unconditional tender payments were respectively made by RSUI to Will-woods.
 

 On May 13, 2009, the trial court issued an order designating the March 27 and April 20, 2009 judgments as final under C.C.P. art. 1915(B)(1).
 

 On May 22, 2009, Willwoods filed a Motion for Devolutive Appeal from the March 27 and April 20, 2009 judgments.
 

 Additionally, pursuant to RSUI’s motion, the trial court issued a judgment on June 4, 2009 explaining how the penalties, attorneys’ fees and interest in its previous judgments were calculated, to-wit:
 

 _Jjl. Penalties under LSA-R.S. 22:658 were calculated to be $2,354,432.50, being fifty (50%) per cent of the payment of $4,708,865.00 tendered by RSUI to Willwoods on January 29, 2008.
 

 2. Attorneys’ fees under LSA-R.S. 22:658 were calculated to be $1,177,216.20, being twenty-five (25%) per cent of the payment of $4,708,865.00 tendered by RSUI to Willwoods on January 29, 2008.
 

 3. Damages for delay in performance in the form of legal interest under La. C.C. art. 2000 was calculated to be $1,430,377.78, broken down as follows:
 

 a. Legal interest of $45,341.70 on the payment of the $602,574.94 tendered by RSUI to Willwoods on
 
 *1108
 
 July 2, 2007, due from the date of judicial demand on August 28, 2006 until paid on July 2, 2007.
 

 b. Legal interest of $609,098.33 due on the payment of the $4,708,865.00 tendered by RSUI to Willwoods on January 29, 2008, due from the date of judicial demand on August 28, 2006 until paid on January 29, 2008.
 

 c. Legal interest of $775,937.75 due on the payment of the $4,552,076.74 tendered by RSUI to Willwoods on July 21, 2008, due from the date of judicial demand on August 28, 2006 until paid on July 21, 2008.
 

 Finally, on June 9, 2009, RSUI filed a Motion for Suspensive Appeal from the March 27 and April 20, 2009 judgments.
 

 PENALTIES UNDER LSA-R.S. 22:658 Review of denial of penalties on RSUI’s July 21, 2008 tender
 

 On appeal, in its only assignment of error, Willwoods argues that the trial court erred in awarding penalties only upon the $4,708,865.00 payment made by RSUI on January 29, 2008, rather than also on the additional $4,552,076.74 payment made by RSUI on July 21, 2008. Willwoods claims that LSA-R.S. 22:658 mandates that penalties be calculated on both of these payments. Willwoods argues that because RSUI did not engage in any further appraisals or inspections during the interim period between the January 29, 2008 and the July 21, 2008 payments, penalties are mandated on both payments.
 

 [SA thorough review of the reeord leads us to the conclusion, however, that Will-woods’ position on its assignment of error is without merit. In the memorandum filed in support of its Motion for Partial Summary Judgment, Willwoods only argued for penalties for RSUI’s delay in making the January 29, 2008 payment. Willwoods argued that because RSUI unquestionably had proof of Willwoods’ loss by November 26, 2007 (the date of Mr. Reilly’s report) and nevertheless waited 63 days (until January 29, 2008) to tender that unconditional payment to Willwoods, RSUI was liable for penalties under the mandatory provisions of LSA-R.S. 22:658. The record further reflects that at the April 23, 2009 hearing on the motion to strike RSUI’s appeal, counsel for Will-woods stated that they never filed anything addressing “the 606,000 and the 4.5 million as far as substantive issues as to why they were late,” explaining that was the reason they moved for
 
 'partial
 
 summary judgment. At that same hearing, the trial judge stated this motion “started with one thing and ended with something different and that’s why I ruled the way I ruled the first time because I wasn’t of the opinion that this case was over.” Moreover, in its May 13, 2009 judgment, the trial court states that “this Court retains jurisdiction over the remaining pending bad faith claims.” In said judgment, the trial court continued the trial that previously had been set, and stated that a new trial date would be scheduled on a later date. Furthermore, both parties acknowledged in their memoranda submitted in connection with RSUI’s Motion for Order of Stay the proceedings pending the outcome of this appeal that the trial court had only ruled on Willwoods’ bad faith claim concerning RSUI’s January 28, 2008 tender to Willwoods and not on RSUI’s two other tenders.
 
 [4]
 
 |nThus, it is clear from the
 
 *1109
 
 record that the trial court was never asked to rule and in fact never did rule on the issue of whether penalties pursuant to LSA-R.S. 22:658 should be assessed against RSUI on its July 21, 2008 tender to Willwoods. Accordingly, we find no merit to Willwoods’ assertion that the trial judge erred in not awarding penalties on the final payment of $4,552,076.74 made by RSUI on July 21, 2008. Rather, we find the trial court has not ruled on this issue and as such that issue is not properly before this Court in the instant appeal.
 

 Review of a ward of penalties on RSUI’s January 28, 2008 tender
 

 In its response to Willwoods’ appeal and in its cross-appeal, RSUI addressed the merits of the award by the trial court to Willwoods of penalties on RSUI’s January 28, 2008 tender to Will-woods. RSUI argues that the trial court erred in awarding penalties and attorneys’ fees on this payment because there is no evidence that the delay in this payment was arbitrary, capricious or without probable cause. RSUI contends it did not have the burden of offering an explanation or justification for the late payment; rather, it was Willwoods’ burden to establish that the alleged late payment was arbitrary. RSUI bases its argument on the fact that the policy in question called for an appraisal process to evaluate the loss if the insured and RSUI could not agree on the amount of Willwoods’ losses. RSUI contends that Willwoods invoked this process. RSUI argues that Willwoods’ claim rests upon the November 26, 2007 “preliminary” report from Mr. Reilly, the appraiser selected by RSUI. RSUI contends that since the estimate of damages contained in Mr. Reilly’s report did not agree with the estimate of damages contained in Mr. Conn’s report, Mr. Reilly’s estimate of damages cannot be considered an undisputed amount. As such, RSUI contends that submission of Mr. Reilly’s report was merely a step in the appraisal process, and that it would 110have been within its rights to wait until the results of the pending appraisal process were final before making any additional payments to Willwoods. RSUI claims, accordingly, that it should not be punished for choosing to tender a substantial portion of the claim to Will-woods five months before the appraisal process was completed. RSUI concludes that it was error for the trial court to conclude that RSUI’s conduct was arbitrary, capricious and without probable cause.
 

 Willwoods, in its response to RSUI’s appeal, contends that there is no existing jurisprudence to hold or suggest that imposition of the appraisal process stays the application of LSA-R.S. 22:658. Will-woods contends that to adopt the position suggested by RSUI would in effect preempt this statute. Willwoods repeats its argument that since the $4,708,865.00 payment was paid more than two months after Mr. Reilly’s November 26, 2007 report, it was not timely paid, and accordingly, the trial court properly awarded the penalty on said payment under LSA-R.S. 22:658.
 

 All insurers shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. LSA-R.S. 22:658 A(l). Insurers are liable for penalties when the failure to
 
 *1110
 
 make such payment within thirty days after receipt of satisfactory written proofs and demand therefor is found to be arbitrary, capricious, or without probable cause. LSA-R.S. 22:658 33(1). This statutory provision is penal in nature and, as such, must be strictly construed.
 
 Urology Clinic of New Orleans, Inc. APMC v. United Fire and Cas. Co.,
 
 08-0444, p. 3 (La.App. 4 Cir. 9/10/08), 993 So.2d 803, 807.
 

 The Louisiana Supreme Court recently reviewed the elements necessary for prevailing on a cause of action for penalties under LSA-R.S. 22:658.
 
 Louisiana Bag Company v. Audubon Indemnity Co.,
 
 2008-0453 (La.12/2/08), 999 So.2d 1104. In order to prevail on a cause of action for penalties under this statute, the plaintiff is required to make a showing “that (1) an insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within thirty days of receipt thereof, and (3) the insurer’s failure to pay is arbitrary, capricious or without probable cause.”
 
 Id.,
 
 at p. 6, 999 So.2d at 1109.
 

 Our review of the record indicates that RSUI was in possession of substantial, detailed documentation describing the repair estimates for Willwoods’ properties at the time the instant suit was filed. Thereafter, since an agreement could not be reached, the appraisal process provided for in the insurance policy was implemented. According to his November 26, 2007 appraisal report, Mr. Reilly, the “competent and impartial” appraiser chosen by RSUI for the appraisal review process, reviewed extensive documents from the other adjusters, contractors, analysts and engineers who rendered reports as to the amount of Willwoods’ damages, including “a volume of photos of the exterior and interior of all the structures which were provided by the adjusters and experts.” Mr. Reilly “also made a personal inspection of all of the buildings at the properties involved in the appraisal process over a three day period in October of 2007.” In his detailed appraisal report, as supplemented, Mr. Reilly appraised Willwoods’ remaining damages at $11,256,059.00. Based on Mr. Reilly’s appraisal report, after subtracting the prior payments and applicable deductibles, the amount owed at that point by RSUI to Willwoods was $4,735,183.00. This was over and above the $10,000,000.00 that had previously been paid to Willwoods by its primary and first excess insurers and the initial payments of $602,574.00 made by RSUI to Willwoods on July 2, 2007. On January 29, 2008, RSUI made an additional “unconditional tender” of $4,708,865.00 to Will-woods, which, as noted above, is $26,318.00 less than the appraised value of Willwoods’ remaining damages as [,.¿found in Mr. Reilly’s report, as adjusted for prior payments and applicable deductibles. It should also be noted that in his supplemental letter to Mr. Halpern dated November 29, 2007, Mr. Reilly stated that “Anticipating your agreement with our assessment
 
 which is supported by the overwhelming weight of evidence
 
 as per the various engineering expert reports previously forwarded to you, we are attaching our signed appraisal award to formalize the process.” (Emphasis added.)
 

 RSUI argues that it was not obligated to pay this amount ($4,708,865.00) at that point because the appraisal process was still ongoing.
 
 [5]
 
 We disagree. RSUI knew at that time that the damage amounts
 
 *1111
 
 contained in Mr. Conn’s report, as well as the damage amounts submitted by Will-woods much earlier in this claim process, including prior to Willwoods’ filing of its Petition for Damages in this case, were substantially more than the damage amounts stated in Mr. Reilly’s report. Furthermore, the record indicates that RSUI’s unconditional tender on January 29, 2008 was based at least partly on Mr. Reilly’s “suggested appraisal award.”
 
 [6]
 
 Thus, the evidence submitted in support of Willwoods’ Partial Motion for Summary Judgment and in opposition to RSUI’s Motion for Summary Judgment confirms that RSUI had undisputed written proof that Willwoods suffered damages of at least an additional $4,708,865.00 upon its receipt of Mr. Reilly’s report, yet it failed to pay this additional amount within thirty days of receipt of such proof, as mandated by LSA-R.S. 22:658.
 

 Having found that RSUI did not pay Willwoods the amount set forth in Mr. Reilly’s report within the thirty-day period mandated by LSA-R.S. 22:658, the question now becomes whether RSUI’s delay in paying this loss within said thirty-|dayis period was “arbitrary, capricious, or without probable cause.” The phrase “arbitrary, capricious, or without probable cause” is synonymous with the word “vexatious.” In Louisiana law, both terms describe an insurer whose willful refusal to pay a claim is not based on a good faith defense.
 
 Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd’s of London,
 
 616 So.2d 1250, 1253 (La.1993). An insurer’s refusal to pay a claim is not arbitrary, capricious, or without probable cause where serious issues regarding the appellant’s right to recovery are raised.
 
 B. Bennett Mfg. Co., Inc. v. S. Carolina Ins. Co.,
 
 96-731 (La.App. 5 Cir. 3/25/97), 692 So.2d 1258. When there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer’s failure to pay within the statutory time limits when such reasonable doubts exist.
 
 Reed v. State Farm Mut. Auto. Ins. Co.,
 
 2003-0107 (La.10/21/03), 857 So.2d 1012, 1020. Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action.
 
 Id.
 

 In the present case, we find that the trial court correctly questioned RSUI’s payment prior to Mr. Halpern’s award if RSUI truly felt that such payment was not due until Mr. Halpern’s report was prepared. Also, we agree with the trial court’s finding that RSUI failed to provide a good faith defense or reason why it failed to follow the report of Mr. Reilly, the “competent and impartial” appraiser that it had appointed as part of the appraisal process.
 

 The documents submitted in support of Willwoods’ Partial Motion for Summary Judgment indicate that, at the very latest, on November 29, 2007, the date of Mr. Reilly’s report, as supplemented, RSUI was on notice that the losses sustained by Willwoods were significantly greater than RSUI’s initial tender of $602,574.00. It is clear from the record that at least as of November 29, 2007, 114RSUI knew that it would have to pay Willwoods at least an additional $4,708,865.00 on Willwoods’ damages claim. As such, because RSUI
 
 *1112
 
 was in possession of satisfactory written proofs of Willwoods’ losses and because RSUI’s willful refusal to pay Willwoods’ claim was not based on a good faith defense, RSUI’s failure to pay at least an additional $4,708,865.00 on Willwoods’ damages claim within thirty days of November 29, 2007 was clearly arbitrary, capricious, or without probable cause, thereby subjecting RSUI to the 50% penalty called for in LSA-R.S. 22:658.
 
 Louisiana Bag Company v. Audubon Indemnity Co., supra.
 

 For the reasons set forth above, we agree with the trial court’s finding that RSUI’s failure to pay to Willwoods the additional $4,708,865.00 on Willwoods’ damages claim within thirty days of November 29, 2007 was arbitrary, capricious, or without probable cause, and in violation of LSA-R.S. 22:658, thereby necessitating the imposition of penalties and attorneys’ fees against RSUI in favor of Willwoods. As such, the trial court did not err in awarding penalties to Willwoods under LSA-R.S. 22:658 in the amount of $2,354,432.50 on the January 29, 2008 tender made by RSUI to Willwoods.
 

 ATTORNEYS’ FEES UNDER LSA-R.S. 22:658
 

 The trial court awarded attorneys’ fees to Willwoods under LSA-R.S. 22:658 in the amount of $1,177,216.20, being 25% of the payment of $4,708,865.00 tendered by RSUI to Willwoods on January 29, 2008. Attorneys’ fees under LSA-R.S. 22:658 B(l) are mandatory, rather than discretionary, where a breach of LSA-R.S. 22:658 B(l) has occurred.
 
 Calogero v. Safeway Ins. Co. of Louisiana,
 
 1999-1625 (La.1/19/00), 753 So.2d 170, 174. Thus, we agree with the trial court that RSUI’s failure to tender $4,708,865.00 within thirty days of Mr. |,fiReilly’s report, as supplemented, also subjected RSUI to payment of attorneys’ fees under LSA-R.S. 22:658.
 

 When attorneys’ fees are awarded pursuant to statute, the trial court must determine the reasonableness of the attorneys’ fee to be awarded.
 
 Rivet v. State, Dept. of Transp. and Dev.,
 
 96-0145 (La.9/5/96), 680 So.2d 1154, 1161. Factors to be taken into consideration in determining the reasonableness of the attorneys’ fees to be awarded include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court’s own knowledge.
 
 Id.
 

 While it is obvious from the record that Willwoods’ attorneys have expended a significant amount of time and effort in representation of their client in this matter, our thorough review of the record before us does not indicate that the trial court considered the above-listed factors in determining the amount of attorneys’ fees Will-woods is entitled to recover from RSUI in this case. Because the record does not adequately support the basis for the amount of the attorneys’ fees awarded by the trial court' to Willwoods, the portion of the trial court’s March 27, 2009 judgment awarding $1,177,216.20 in attorneys’ fees to Willwoods is hereby vacated. This matter is remanded to the trial court for an evidentiary hearing to determine a reasonable amount of attorneys’ fees to be awarded to Willwoods in this case in accordance with the factors listed above and other applicable law.
 

 |
 
 INTEREST PURSUANT TO LA C.C. ART. 2000
 

 RSUI argues on appeal that the trial court was without authority to award
 
 *1113
 
 interest in the April 20, 2009 judgment because the prior judgment of March 27, 2008 was a final judgment not subject to modification in the absence of a motion for new trial being filed by Willwoods. We disagree.
 

 Louisiana Code Civil Procedure articles 1841 and 1915(B)(2) allow the trial court to modify a prior interlocutory judgment at any time prior to rendition of a final judgment on the merits.
 
 LeBlanc v. Aysenne,
 
 2005-0297 (La.1/19/06), 921 So.2d 85, 88. The March 27, 2008 judgment was not declared a final judgment when it was rendered and was thus an interlocutory judgment. As such, the trial judge had the authority to modify that judgment. Further, the April 20, 2009 judgment states “At the status conference held on April 8, 2009 with all parties, all parties agreed that the imposition of damages pursuant to La. C.C. art. 2000 present [sic] a purely legal question and the calculation should be determined by the Court.” We thus find no merit to RSUI’s argument that the trial court was bound by its March 27, 2008 judgment and was thus without authority to award interest in its April 20, 2009 judgment.
 

 RSUI further argues that Will-woods cannot recover both damages for delay in performance under La. C.C. art. 2000 and penalties and attorneys’ fees under LSA-R.S. 22:658. RSUI argues that a clear reading of the article 2000 supports its position. Article 2000 states, in pertinent part, that “damages for delay in performance are measured by the interest on that sum from the time it is due” and that the “obligee may recover these damages without having to prove any loss, and
 
 whatever loss he may have suffered he can recover no more.”
 
 (Emphasis added.) RSUI argues that this emphasized portion of article 2000 allows for recovery of damages for delay in performance under La. C.C. art. 2000
 
 or
 
 penalties and | ^attorneys’ fees under LSA-R.S. 22:658, if proven,
 
 but not both.
 
 We find this interpretation by RSUI to be without merit. In our view, this emphasized portion of article 2000 simply confirms that the obligee to the contract (Willwoods) does not have to prove its damages for delay in performance under the contract. Rather, under this statute, the obligee will be entitled to recover the amount of damages for delay in performance “at the rate agreed by the parties” in the contract, or “in the absence of agreement,” the prevailing “rate of legal interest as fixed by R.S. 9:3500,” no more or no less.
 

 Furthermore, the enactment of special statutes such as LSA-R.S. 22:658 to award penalties and attorneys’ fees in excess of damages for delay in performance recognizes that the insurer can be liable for penalties and attorneys fees in addition to legal interest.
 
 See,
 
 Litvinoff, 6 Louisiana Civil Law Treatise: The Law of Obligations, § 9.5 (2d ed.). The penalties and attorneys’ fees allowed under LSA-R.S. 22:658 are statutorily imposed as a result of RSUI’s failure to timely pay properly documented claims under the contract of insurance it issued to Willwoods. The damages for delay in performance, in the form of legal interest, payable pursuant to La. C.C. art. 2000, arise from RSUI’s contract of insurance with Willwoods and would be payable whether or not penalties under LSA-R.S. 22:658 were imposable. Thus, even an insurer who delays payment in good faith can be subject to an award of damages for delay in performance under La. C.C. art. 2000. Because the penalties and attorneys’ fees imposed pursuant to LSA-R.S. 22:658 are separate and distinct from the damages for delay in performance allowed under La. C.C. art. 2000, Willwoods can recover from RSUI penalties and 118attorneys’ fees under LSA-R.S.
 
 *1114
 
 22:658 and damages for delay in performance in the form of legal interest under La. C.C. art. 2000.
 
 [7]
 

 RSUI argues that Willwoods is not entitled to an award of interest under La. C.C. art. 2000 because a judgment has never been rendered against it on the damage claims made by Willwoods. As the trial court correctly found, however, La. C.C. art. 2000 does not require that a judgment be rendered before judicial interest can be awarded. Willwoods’ petition for damages specifically included a request for “legal interest” in addition to penalties and attorneys’ fees. We agree with the trial court’s finding that the payments made by RSUI to Willwoods were unconditional tenders, rather than payments made pursuant to a settlement or compromise agreement between the parties. As such, the trial court did not err in its April 20, 2009 judgment awarding legal interest to Willwoods on the three tender payments made from RSUI to Willwoods.
 

 Since the contract of insurance that was issued by RSUI to Willwoods is void of any agreement between the parties as to a rate of interest to be imposed on RSUI in case of RSUI’s failure to timely perform (pay) under the contract of insurance it issued to Willwoods, in accordance with La. C.C. art. 2000, Willwoods is entitled to interest at the rate of legal interest as fixed by R.S. 9:3500 on all sums due from RSUI “from the time it is due” until paid.
 

 In making a determination as to when the payments in question were “due” from RSUI to Willwoods, we note that the insurance policy issued by RSUI to Will-woods specifically provides that “liability attaches to the Company [RSUI] only af
 
 ter
 
 the primary and underlying excess insurer(s) have paid or have admitted liability for the full amount of their respective ultimate net loss liability”. At the time Willwoods filed suit against RSUI on August 28, 2006, the policy limits of | ,9the primary insurer, Landmark, had been exhausted. Essex, the first underlying excess insurer, was included in the suit because its policy limits had not yet been exhausted. As noted above, the Essex policy limits were exhausted on November 30, 2006 and Essex was thereafter dismissed from this suit on March 7, 2007. Although Willwoods alleges in its petition that it is entitled to legal interest “from date of judicial demand until paid”, the policy itself clearly states that the liability of RSUI to Willwoods attaches only after the primary and underlying excess insurers have paid or have admitted liability for the full amount of their respective ultimate net loss liability.
 

 The trial court calculated the legal interest awarded to Willwoods to run from the date of judicial demand until the three unconditional tenders were respectively made. We find this to be in error because RSUI is not obligated under the policy in question to pay Willwoods’ losses until all of the underlying insurance coverage has been exhausted. Because the Essex policy limits were exhausted on November 30, 2006, we find that, for purposes of Will-woods’ claims made pursuant to La. C.C. art. 2000, the payments from RSUI to Willwoods became “due” on November 30, 2006. For this reason, the portion of the trial court judgment awarding legal interest in the amount of $1,430,377.70 is hereby vacated. On remand, the trial court is instructed to recalculate the legal interest award from November 30, 2006, rather
 
 *1115
 
 than from the date of judicial demand, until the date each tender was respectively paid.
 

 CONCLUSION
 

 For the foregoing reasons, the trial court’s judgment of March 27, 2009 awarding penalties in the amount of $2,354,432.50 to Willwoods is hereby affirmed. The trial court’s judgment of April 20, 2009 awarding judicial interest to l2oWillwoods is hereby vacated and this matter is remanded for a calculation of legal interest to run from November 30, 2006 until the date each tender was respectively made. The trial court’s judgment of March 27, 2009 awarding attorneys’ fees in the amount of $1,177,216.20 to Willwoods is hereby vacated. On remand, the trial court is ordered to hold an eviden-tiary hearing for a determination of a reasonable amount of attorneys’ fees due Will-woods from RSUI in accordance with this opinion.
 

 AFFIRMED IN PART; VACATED IN PART; REMANDED.
 

 [1]
 

 . This statute has been renumbered as LSA-R.S. 22:1892 but will be referred to in this opinion under the prior number 22:658, as the prior number was used in all of the briefs and judgments of the trial court.
 

 [2]
 

 . RSUI claims that Essex made final payments on July 2, 2007; however, there is no proof of this in the record and this is inconsistent with the dismissal of Essex from the suit on March 7, 2007.
 

 [3]
 

 . Willwoods’ claim for penalties and damages under LSA-R.S. 22:1220 was denied in the trial court's judgment rendered on March 27, 2009. Willwoods has not assigned this denial as an error on appeal. Accordingly, the trial court’s denial of Willwoods' claim under LSA-R.S. 22:1220 is not addressed in this appeal.
 

 [4]
 

 . In its Memorandum in Support of its Motion for Order of Stay, RSUI asserts: "Therefore, while the issue of bad faith regarding the January 2008 tender and judicial interest regarding all three (3) tenders is now before the appellate court, the issue of bad faith on the July 2007 and July 2008 tenders remains before this Court.”
 

 Likewise, in its Memorandum in Opposition to RSUI's Motion for Order of Stay, Will-
 
 *1109
 
 woods acknowledges that "The Court further ordered that it would retain jurisdiction over the remaining claims for bad faith penalties on the Defendant's tenders of July 2, 2007 and July 21, 2008, as these claims had yet to be litigated.” Willwoods goes on to argue against the stay order because the trial court had retained jurisdiction over these remaining bad faith claims.
 

 [5]
 

 . RSUI claims in its memorandum attached to its Cross-motion for Summary Judgment on the issue of bad faith penalties and attorneys' fees that that the unconditional tender of $4,708,865.00 made on January 29, 2008 was "a good faith effort to resolve the claim and move forward with the appraisal process[.]”
 

 [6]
 

 . In a letter to Willwoods’ counsel dated March 25, 2008, in an effort to explain the basis for the January 29, 2008 tender by RSUI to Willwoods, RSUI’s counsel stated that notwithstanding a reservation of rights, "RSUI made a good faith tender based on Ed Reilly's suggested appraisal award taking into consideration all previous payments and the applicable deductibles.”
 

 [7]
 

 .
 
 See, Sanders v. Wysocki,
 
 94-2062 (La.App. 4 Cir. 5/16/95), 655 So.2d 713;
 
 Porche v. Waldrip,
 
 597 So.2d 536 (La.App. 1 Cir. 1992).