WICKER, J.
| defendant, Security Plan Fire Insurance Company, appeals the trial court’s calculation of penalties and attorneys’ fees in a judgment against it arising out of plaintiffs’ Hurricane Isaac claim. For the following reasons, we amend the trial court’s award of statutory penalties, vacate that portion of the trial court judgment awarding attorneys’ fees, and remand this matter to the trial court for an evidentiary hearing consistent with this opinion.
FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff, Mary Williams, filed suit against defendant-insurer, Security, alleging that her Security insurance policy provided coverage for property damages she alleged her home sustained during Hurricane Isaac in August 2012. Plaintiff further pled that Security handled her claim in bad faith and should be subject to penalties and attorney fees under La. R.S. 22:1973 and La. R.S. 22:1892, as well as consequential damages including mental anguish resulting from Security’s breach of its duty to handle her claim in good faith.
The matter proceeded to a bench trial on May 20, 2016. At trial, plaintiff testified that her home sustained roof damage as a result of Hurricane Isaac, which caused roof leaks into the interior of her home and required her to use pots and pans to collect the leaked water during any rainstorm.[1]- She stated that her Security insurance agent inspected the home, soon after Hurricane Isaac, and informed her that her property damage did not exceed her policy deductible. Plaintiff, an elderly woman, testified that she called Security thereafter and discussed the matter with customer service, indicating that she did not understand the deductible concept, She further testified that she intermittently reported her dissatisfaction concerning |2her claim to the insurance agents who came to her home to collect her monthly premium.[2]
Anthony Odeh, a licensed public insurance adjuster and general contractor, testified that he performed repair work on plaintiffs .home following a residential fire in the rear of the home less than two years after Hurricane Isaac. Upon his inspection, he noticed what appeared to be storm damage on her roof and asked plaintiff whether her home sustained storm damage. After plaintiffs, daughter informed him that plaintiff did in fact make a roof claim following Hurricane Isaac that was denied, Mr. Odeh contacted Security and offered to let them come and re-inspect plaintiffs roof before he made any repairs, which it refused.
Mr. Odeh testified that he has completely replaced plaintiffs roof and has not received any payment from plaintiff for his work performed. He testified that the roof replacement was at a total cost of $10,800.00 in addition to $8,681.23 for replacement of the fascia, soffit, siding, and metal. Mr. Odeh testified that the roof replacement work that he performed was a *202 result of Hurricane Isaac in 2012.[3]
Concerning depreciation, Mr. Odeh testified that there is no set formula or schedule to calculate depreciation in the insurance industry and that he has on numerous occasions negotiated with insurance companies to reach an agreeable or acceptable depreciation calculation. He testified that plaintiffs roof prior to Hurricane Isaac was protected by a large oak tree that shaded it from the sun and other elements regularly. However, according to plaintiff, that tree fell during Hurricane Isaac. He testified that he would depreciate the roof by approximately $2,000.00, and further stated that he would not depreciate the soffit and fascia because it is plastic and, thus, lasts indefinitely without exterior forces.
IsMichael DeAgano, a Security home service agent, testified that Security issued to plaintiff an Actual Cash Value insurance policy with a $20,000.00 policy limit and a $1,000.00 hurricane deductible. He testified that he is not a licensed adjuster but that Security sent him to inspect plaintiffs home following Hurricane Isaac. He took photographs of the damage that he observed, completed a “Proof of Loss” form that plaintiff signed following his inspection, and submitted the photographs and documentation to Security. He further testified that, after he submitted the documentation to Security, no one from Security contacted him to discuss his photographs or his opinion as to the extent of the home’s damage.
Concerning his inspection, Mr. DeAgano acknowledged that he did not bring a ladder to inspect plaintiffs home nor did he go on to the roof to inspect for roof damage. However, he testified that he could see the top of the roof from the ground and that it was not necessary to actually go onto the roof of the home. Mr. DeAgano confirmed that plaintiff reported to him that she was unhappy about Security’s decision that her damage did not exceed her deductible and that he advised plaintiff to call customer service.
Jamie Louque, a licensed adjuster and claims supervisor for Security, testified as to Security’s practice of sending out an insurance agent or staff member to document proof of loss at insureds’ homes following a claim. She testified that Diane Theriot, a licensed adjuster with 20 years’ experience who is no longer with the company, reviewed the documentation submitted by Mr. DeAgano and adjusted plaintiffs claim. She testified that she did not review plaintiffs claim at the time it was filed but has reviewed the claim since that time. She testified that she agrees with Ms. Theriot’s decision that the damage to plaintiffs home did not exceed the policy’s deductible. She further testified, concerning depreciation of the roof, that Security depreciates at a 5 to 7 percent depreciation per year, with a maximum depreciation of 70%. She stated that plaintiffs claim, based upon the Lage and condition of the home’s roof, would have resulted in the maximum 70% depreciation deduction.
Ms. Louque spoke with plaintiff on the phone a few days after plaintiff received Security’s letter indicating that her damages did not exceed her policy deductible. Ms. Louque did not independently recall the conversation with plaintiff, but testified that her records documented that plaintiff called customer service and indicated that she did not understand the concept of the deductible, which Ms. Louque stated she explained to plaintiff by phone. She testified that Security does not have any further communication from plaintiff docu- *203 merited. She confirmed that no licensed adjuster did an on-site inspection of plaintiffs home and that, after plaintiffs counsel requested a second inspection, Security declined to do so.[4]
The trial judge left the matter open and accepted post-trial memoranda. On August 9, 2016, the trial judge issued a judgment, awarding plaintiff $16,081.23 “for damages under the insurance contract;” statutory penalties double the amount of the damages, in the amount of $32,162.46; and $12,864.98 in attorney fees.[5] The trial judge issued reasons for judgment, finding that plaintiff sustained damage to her home as a result of Hurricane Isaac in August 2012, sufficient to warrant roof replacement. The trial judge further found that Security’s failure to properly inspect and adjust her claim was arbitrary and capricious. The trial court further found that plaintiff failed to put forth “sufficient evidence of mental distress or inconvenience to warrant general damages” and denied that portion of plaintiffs claim.
DISCUSSION
In this appeal, Security does not seek review of the trial court’s $16,081.23 award for damages under the contract, nor does Security assert that plaintiff failed to prove that its actions were arbitrary and capricious and sufficient to support an award for statutory penalties and attorney fees—rather, Security only challenges the trial court’s calculation of penalties and attorney fees under La. R.S. 22:1892(B) and 1973(B).[6]
In its first assignment of error, Security asserts that the trial court erred in its calculation of penalties. Security contends that the trial court’s penalty award, which simply doubles the damages awarded under the contract, is in direct violation of the recent Louisiana Supreme Court decision, Durio v. Horace Mann Insurance Company, 11-0084 (La. 10/25/11), 74 So.3d 1159. We agree.
In Durio, the Louisiana Supreme Court held:
*204 La. R.S. 22:1220 [now La. R.S. 22:1973] legislatively imposes a duty of good faith and fair dealing on insurers, and sets forth certain acts, which if knowingly committed by an insurer, constitutes a breach of that duty. Wegener [ v. Lafayette Ins. Co., 10-0810 (La. 03/15/11)] 60 So.3d [1220] at 1229. Section (A) provides for the mandatory award of any “damages sustained as a result of the breach” of the duty imposed. Section (C) provides that in addition to these damages, discretionary penalties can be awarded, limited to two times the “damages sustained,” or $5,000.00, whichever is greater. Considering the statute in its entirety and applying the words of the ^statute as written, the only logical reading is that the “damages sustained” in Section (C) are the same “damages sustained as a result of the breach” in Section (A).
Durio v. Horace Mann Ins. Co., 11-0084 (La. 10/25/11), 74 So.3d 1159, 1170.
The Court further held that, under La. R.S. 22:1973, “[a] logical and consistent reading of the statute mandates a finding that contractual damages due or awarded under the insurance contract should not be used to calculate penalties under the statute.” Id. at 1170-71.
In this case, because the trial court determined that' plaintiff failed to prove any consequential or special damages sustained as a result of the breach, we find the maximum penalty that can be awarded is $5,000.00 under La. R.S. 22:1973. La. R.S. 22:1892, however, provides for a penalty in the amount of “fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater....” Under the facts of this case, the penalty provided under La. R.S. 22:1892 would be $8,040.61.
The Louisiaha Supreme Court has consistently “recognized the close relationship between the conduct prohibited in La. R.S. [22:1973] and the conduct prohibited in La. R.S. [22:1892].” Calogero v. Safeway Ins. Co, 99-1625 (La. 1/19/00), 753 So.2d 170, 174. However, an insured cannot recover penalties under both statutes. Id. Because the mandatory penalty as calculated under La. R.S. 22:1892, under the facts of this case, would be greater than the $5,000.00 penalty permitted under La. R.S. 1973, the statutory penalty under La. R.S. 22:1892 applies. See Calogero, 753 So.2d at 174. Accordingly, we find that the trial court erred in' calculating the penalty by doubling the entire amount awarded under the insurance contract. Rather, the greatest penalty to which plaintiff is entitled is the mandatory statutory penalty under La. R.S. 22:1892, which is fifty-percent of the entire amount found due from the insurer to the insured, or $8,040.61. Accordingly, we amend the trial court judgment to grant penalties in the amount of $8,040.61.
In its second assignment of error, Security challenges, the amount of attorneys’ fees awarded. Security complains that plaintiff failed to introduce sufficient evidence to justify , the trial court’s award of $12,864.98 in attorneys’ fees. The Louisiana Supreme Court has determined that a trial judge, must consider certain factors in awarding statutory attorneys’ fees. See Rivet v. State, Dept. of Transp. and Dev., 96-0145 (La. 9/5/96), 680 So.2d 1154, 1161. This Court, in following the Louisiana Supreme Court’s instructions, has stated:
When attorneys’ fees are awarded pursuant to statute, the trial court must determine the reasonableness of the attorneys’ fee to be awarded. Rivet v. State, Dept. of Transp. and Dev., 96-0145 (La. 9/5/96), 680 So.2d 1154, 1161. Factors to be taken into consideration in determining the reasonableness - of the attorneys’ 'fees to be awarded include: (1) the ultimate result obtained; (2) the *205 responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court’s own knowledge.
Willwoods Cmty. v. Essex Ins. Co., 09-651 (La.App. 5 Cir. 4/13/10), 33 So.3d 1102, 1112.
Our review of the record reflects that there is no evidence to determine that the trial judge considered the above-listed factors in awarding attorneys’ fees in this case, as no evidence was introduced at trial concerning attorneys’ fees. Accordingly, we vacate that portion of the trial court’s judgment awarding attorneys’ fees and remand this matter to the trial court for an evidentiary hearing to determine a reasonable amount of attorneys’ fees in accordance with the factors listed above arid other applicable law. See Willwoods, supra.
DECREE
For the reasons provided herein, we amend the trial court judgment’s award of penalties to reflect an award to plaintiff of $8,040.61 in penalties under La. R.S. 22:1892. We further vacate that portion of the judgment awarding attorneys’ fees and remand this matter to the trial court for further proceedings consistent with this opinion.
AMENDED IN PART; VACATED IN PART; REMANDED

. Melvina White, plaintiffs daughter, testified at trial that her mother constantly complained about storm damage to her home but that the leaking in the interior of the home was resolved within a few weeks. She did, however, testify that she was “in and out” of her mother’s affairs and that she relied on Mr. Odeh’s expert opinion as a licensed contractor concerning the roof damage.

. There was conflicting testimony regarding whether one, two, three, or four different insurance agents came to her home to collect premiums. Security's agent, Michael DeAga-no, testified that he is the only Security agent who has collected a monthly premium from plaintiff at her home and that plaintiff may be confused concerning other agents employed by other insurance companies who may have issued policies to plaintiff.

. Although the typed invoice reflects that the price included replacement gutters, Mr. Odeh testifled that the home does not have gutters and that the invoice reflects a clerical error.

. The depositions of Sid Harp, Security’s President, and Diane Theriot, Security’s licensed adjuster who adjusted plaintiff’s claim, were also submitted.

. The trial judge also awarded actual court costs, which are not at issue in this appeal.

. La. R.S. 22:1973(B) provides:
In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
La. R.S. 22:1892(B) provides:
Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) of this Section, respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2) of this Section when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.